## U.S. DISTRICT COURT FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | | |
|---|---|---|
| **PAUL H. GEFFERT** | : | |
| **ELIZABETH GEFFERT** | : | |
| 4312 Locust Lane | : | |
| Bethesda, MD 20816 | : | |
| | : | |
| *On Their Behalf and on* | : | |
| *Behalf of a Class of* | : | |
| *Persons Similarly* | : | |
| *Situated* | : | |
| | : | |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | Case No. _____ |
| **AMERICAN HOME** | : | |
| **MORTGAGE SERVICING INC.** | : | |
| Serve on: | : | |
| The Corporation Trust | : | |
| Incorporated, Resident Agent | : | **DEMAND FOR JURY TRIAL** |
| 300 East Lombard Street | : | |
| Suite 1400 | : | |
| Baltimore, MD 21202 | : | |
| | : | |
| | : | |
| *Defendants* | : | |

## COMPLAINT

Paul Geffert and Elizabeth Geffert ("Named Plaintiffs" or "the Gefferts"), individually and on behalf of a class of people similarly situated, hereby sue American Home Mortgage Servicing Inc. ("AHMSI" or "Defendant") and for cause state:

1. AHMSI, through their authorized agents, affiliates, and attorneys, have filed and prosecuted illegal foreclosure, collection actions against the Named Plaintiffs and class members throughout the State of Maryland. The collection practices are illegal because papers filed in the foreclosures of class members and Named Plaintiffs are

"robo-signed" and bogus; or because the foreclosures violate the mandatory legal requirements of Maryland's foreclosure laws and rules of procedure.

2. Plaintiffs are members and representatives of the "Class" (as defined in ¶ 43 below) which consists of Maryland residents that AHMSI, through its authorized attorneys and/or Substitute Trustees in Maryland, initiated foreclosure proceedings against Plaintiffs by using improper and deceptive papers which were robo-signed and false—in other words what the papers submitted by AHMSI's agents to Maryland courts were not what they purported to be and were frauds on the court.

3. These illegal foreclosure cases, based on the false papers, are reported in the public records and credit reports of the Plaintiffs and Class members which result in damages such as lower credit scores by the major credit bureaus who report the illegal and bogus foreclosure actions filed on behalf of AHMSI that are part of the public records of each county in the State of Maryland as a negative consequence on the Plaintiffs and Class Members' credit reports.

4. Plaintiffs have also been harmed, damaged, and injured by AHMSI individually by failing to provide, as required as a Maryland licensed mortgage servicer, Plaintiffs with prompt and accurate accountings of the amount owed when sought from Defendant.

5. The systemic problems identified herein are equally troubling since AHMSI has received an infusion of government cash from taxpayers, like the Gefferts, to provide incentives to participate in the Making Home Affordable Program of the U.S. Treasury Department.  Upon information and belief the taxpayers' presently have paid more than a $133 million to AHMSI through incentive payments paid by the

U.S. Department of Treasury.  This belief is based upon public reports reported on financialstability.gov and other pubic sources.

6.  These unfair and deceptive acts by AHMSI constitute violations of the MARYLAND MORTGAGE FRAUD PREVENTION ACT ("MMFPA"), MARYLAND CONSUMER PROTECTION ACT ("MCPA"), MARYLAND CONSUMER DEBT COLLECTION ACT ("MDCDCA"), and the common law of Maryland.

## JURISDICTION & VENUE

7.  This Court has jurisdiction and venue of the matters asserted herein for the following reasons:

   a.  On the basis of diversity of citizenship and in light of the amount in controversy is in excess of $75,000 exclusive of costs. 28 U.S.C. § 1332;

   b.  The matters asserted herein in light of a federal question presented.  28 U.S.C. § 1331.

   c.  Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, & 1711-1715 since the amount in controversy exceeds $5,000,000 and the members of the Class are citizens of a state different from the Defendant.

   d.  Declaratory and injunctive relief are available pursuant to 28 U.S.C. §§ 2201 and 2202, Md. Code Ann., §§ 3-401-3-415, and Fed. Rule Civ. Proc. 23;

   e.  Venue is appropriate in this district because the Defendants conduct debt collection business within the District and because the conduct complained of occurred within the District.

## PARTIES

8.  Paul Geffert and Elizabeth Geffert are residents of the State of Maryland and the

3

owners of the real property commonly known as 4312 Locust Lane, Bethesda, MD 20816 ("the Property").

9. Defendant American Home Mortgage Servicing Inc. is a Maryland licensed Mortgage lender/servicer (license number 18137).   The resident agent for AHMSI is The Corporation Trust Incorporated located at 300 East Lombard Street, Suite 1400 Baltimore, MD 21202.  AHMSI is a Delaware corporation.

10. Not named as a party to this action, Lender Processing Services ("LPS"), is an agent of AHMSI for all relevant periods alleged herein.   AHMSI delegated authority to LPS to perform certain collection practices services on its behalf and it has accepted responsibility for LPS' bogus signatory practices alleged herein.

11. Not named as parties to this action, Jacob Geesing, Howard Bierman, and Carrie Ward and the law firm of Bierman, Geesing, Ward, & Wood (collectively "BGW") are the authorized agents of AHMSI and affiliates of LPS.

## FACTS

### A.       THE FORECLOSURE CRISIS

12. Over the last four years, Maryland and the United States has been in a foreclosure crisis.  Recent news reports have established that one in ten American homes is at risk of foreclosure.

13. The number of Maryland properties with foreclosure filings has increased substantially throughout the last four years.

14. Increased foreclosures have a detrimental effect not just on the borrowers through damage to credit and reputation as well as emotionally with fear of losing a unique property and the prospect of homelessness, but also on the surrounding

neighborhoods that suffer decreased property values and municipalities that lose tax revenue.

15. The foreclosure crisis is not over.  Economists predict that the high rate of foreclosures will continue through the next five years or more.

16. Since the commencement of the crisis, revelations of bogus, false, and deceptive "robo signing" have come to light involving national lenders and mortgage servicers. In Maryland the illegal "robo-signing" issue has even come to the forefront because attorneys and substitute trustees, including those acting on behalf of AHMSI in the Gefferts' illegal foreclosure actions (discussed below) have admitted that they filed bogus documents in hundreds of foreclosure cases filed in state courts.

### B.   MARYLAND'S RESPONSE TO THE FORECLOSURE CRISIS

17.   In 2007 at the beginning of the crisis, Governor O'Malley convened a task force of representatives to address the crisis that was then underway.  The Maryland Homeownership Preservation Task Force produced a report which aptly summarized the devastating effect of foreclosures on the community as follows:

> Foreclosures have a devastating effect on homeowners and the communities in which they live. Frequently, a homeowner who loses his or her home to foreclosure loses the accrued equity. A property sold in a foreclosure sale typically draws a lower price than it would in a regular market sale. In the first half of 2005, Maryland's "foreclosure discount" was 18.8 percent, according to the St. Ambrose Housing Aid Center, Inc. This is a tragedy for a growing number of Maryland families.

> Extensive damage is felt in neighborhoods and communities across Maryland. Research shows that with every foreclosure on a single family home, the value of homes within an eighth of a mile declines by about nine-tenths of a percent. Property tax revenues decline proportionally, causing a negative impact on state and local governments. A study of foreclosures in Chicago in 2005

> estimated that a single foreclosure costs city government up to $5,000 or more.
>
> Foreclosures also bring with them the potential for more violent crime. Research indicates that for every single percentage point increase in the foreclosure rate in a neighborhood, violent crime in that neighborhood increases by about two percent. Foreclosures can lead to vacant or neglected properties, which create an eyesore and become targets for vandalism. This can tip a community from one dominated by homeowners to one dominated by investors.
>
> Of course, the lending industry and investors also take a hit from rising foreclosure rates. Some major lenders have closed their doors, declared bankruptcy or shuttered their subprime lending arms as a result of the waning demand for risky mortgage products in investor markets. Lenders typically lose $50,000 or more on a single foreclosure, according to information from St. Ambrose Housing Aid Center, Inc. The banking industry cites a figure well over $60,000.

Maryland Homeownership Preservation Task Force Report at 12 (November 29, 2007) *available at*

http://www.gov.state.md.us/documents/HomePreservationReport.pdf (footnotes omitted).

18.  To reasonably address and avoid some of the negative consequences of foreclosure, the Task Force Report made nine general recommendations that are relevant to the issues before the Court.  *See Id.* at 40-43.  Included among these was a specific recommendation, which included the adoption of a good faith and fair dealing standard of care for Maryland licensed mortgage entities such as the Defendant.  *Id.* (recommendation 7.3).

19. In response to the expanding foreclosure crisis and the Task Force Report, the General Assembly introduced and passed several bills during the 2008 legislative

session to change Maryland's foreclosure process and curb certain predatory real

estate processes.  These bills were passed with nearly complete bi-partisan support.

As summarized in the General Assembly's 90 Day Report for the 2008 session:

> Until [2008], Maryland's foreclosure process, from the first foreclosure filing to final sale, had been among the shortest in the nation. Maryland is a quasi-judicial State, meaning that the authority for a foreclosure sale is derived from the mortgage or deed of trust, but a court has oversight over the foreclosure sale process. Most mortgages or deeds of trust include a "power of sale" (a provision authorizing a foreclosure sale of the property after a default) or an "assent to decree" (a provision declaring an assent to the entry of an order for a foreclosure sale after a default). Under the Maryland Rules, it was not necessary to serve process or hold a hearing prior to a foreclosure sale pursuant to a power of sale or an assent to a decree. Consumer advocates contended that the short timeframes and weak notice provisions in State law seriously limited a homeowner's options to avoid foreclosure by, for example, working out a payment plan with the lender or selling the house. In addition, filing a request for an injunction to stop the sale is expensive, time consuming, and not a realistic option for most homeowners.
>
> **Senate Bill 216** *(Ch. 1)*/**House Bill 365** *(Ch. 2)*, emergency legislation that took effect April 4, 2008, make a number of significant changes to the foreclosure process in Maryland for residential real property. "Residential property" is defined under the Acts to mean real property improved by four or fewer single-family dwelling units. Except under specified circumstances, the Acts prohibit the filing of an action to foreclose a mortgage or deed of trust on residential property until the later of 90 days after a default in a condition on which the mortgage or deed of trust states that a sale may be made or 45 days after the notice of intent to foreclose required under the Acts is sent.
>
> . . . .
>
> **Senate Bill 217**/**House Bill 360** define "mortgage fraud" as any action by a person made with the intent to defraud that involves:
> • knowingly making, using, or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that it will be relied upon by a mortgage lender, borrower, or any other party to the lending process;

> • receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from the aforementioned actions;
> • conspiring to violate either of the preceding provisions; or
> • filing or causing to be filed in the land records in the county where a residential real property is located any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.
>
> Under the Acts, the "mortgage lending process" includes the solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan, as well as the notarizing of any document in connection with a mortgage loan.

Md. Dept. of Legislative Services, The 90 Day Report, A Review of the 2008 Legislative Session, F16-18 (April 11, 2008) *available at* http://mlis.state.md.us/2008rs/90-Day-report/index.htm.

20. The Maryland Court of Appeals recently adopted in October 2010 an emergency rule to deal with the robo-signing issue based upon the recommendation of the Standing Committee on Rules of Practice and Procedure.  Writing for the Committee the Honorable Alan M. Wilner explained:

> The need for these changes emanates from recent revelations regarding the filing in residential foreclosure actions of affidavits as to which the affiant either did not have sufficient knowledge of the facts stated in the affidavit to validly attest to their accuracy or did not actually read or personally sign the affidavit. Preliminary audits have shown that hundreds of such affidavits have been filed in Maryland circuit courts. Up to this point, courts, with good reason and really of necessity, have relied on the accuracy of affidavits, especially when filed by attorneys, unless there is something on the face of the document to suggest otherwise or the validity of the affidavit is challenged. Evidence that has recently come to light, largely through admissions under oath by the affiants themselves, has shaken the confidence that the courts have traditionally given to those
> kinds of affidavits.

> In the Committee's view, the use of bogus affidavits to support actions to foreclose liens on property, apart from prejudice to the homeowners, constitutes an assault on the integrity of the judicial process itself.

Letter from A. Wilner to the Court of Appeals, Oct. 15, 2010.

21. In further response to the foreclosure crisis, Maryland Commissioner of Financial Regulation required for its licensees, including AHMSI, "a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the…servicing…of any mortgage loan…"   Md. Code Regs. 09.03.06.20.

22. Upon information and belief, part or all of the compensation paid by AHMSI, directly and indirectly through LPS, to Jacob Geesing, Howard Bierman, and Carrie Ward (collectively "BGW") to act as its authorized substitute trustees and attorneys is contingent upon how rapid or quickly BGW conducts the foreclosure action.  The faster BGW processes foreclosures for AHMSI, the higher the compensation and/or the greater number of referrals/future business sent to BGW by AHMSI.  This payment arrangement leads directly and indirectly to the improper, deceptive, and bogus papers, affidavits, and other documents in BGW's foreclosure actions on behalf of AHMSI which are not in conformance with Maryland law since BGW could only retain AHMSI's business by carrying out this business model described on a high volume basis using non-lawyers and non-notaries to sign legal papers.

## C.   AHMSI HAS MADE JUDICIAL ADMISSIONS CONCERNING ITS RELATIONSHIP WITH LPS AND THOUSANDS OF BOGUS FORECLOSURES AROUND THE COUNTRY

23.  In a public filing in the District Court of Dallas County, Texas, *American Home*

*Mortgage Servicing, Inc. v. Lender Processing Services, Inc. et al.*, Case No. 11-10440 (Filed August 23, 2011)("*AHMSI v. LPS*"), AHMSI has made significant admissions in a judicial proceeding that are relevant to and directly relate to the facts alleged herein concerning the debt collection practices of AHMSI and LPS.

24. In *AHMSI v. LPS,* AHMSI admits that LPS directly and indirectly through is subsidiary and affiliates "improperly executed, notarized, and recorded thousands of assignments upon which AHMSI relied in the course of pursing foreclosure proceedings." *AHMSI v. LPS,* Preliminary Statement at Page 1.

25. "As the servicer, AHMSI provides a wide array of services to the [owners of the loans it services], including, but not limited to, collecting principal, interest, tax, and insurance payments from homeowners and, when necessary, initiating foreclosure proceedings on behalf of the [owner of] the loan." *AHMSI v. LPS* ¶ 10.

26. LPS, acting on behalf of AHMSI, "allowed [its] employees other than those appointed as Special Officers of AHMSI to execute certain assignments on the Special Officers' behalf.  Instead of signing their own names, the [unauthorized] surrogates signed the names of the Special Officers, meaning the person whose name appeared on the…documentation was not the person who appeared before the witness or notary.  Notaries working under [LPS'] direction and control improperly notarized the assignments containing signatures of surrogates rather than the Special Officers authorized by AHMSI to sign the documents.  The delegation of signing authority to surrogates exceeded the scope of [LPS'] authority under AHMSI's corporate resolutions.  As a consequence, the assignments executed by the surrogates did not comply with Defendants' contractual obligations." *AHMSI v. LPS* ¶ 21.

27. "On November 16, 2009, AHMSI's board approved" a resolution of signing authority to LPS employees acting as "Special Officers to the ministerial act of executing mortgage assignments and other designated documents." *AHMSI v. LPS* ¶ 24. However, that resolution did not permit "the delegation of that signature authority to surrogates." *Id.*

28. LPS admitted to AHMSI in "late November 2009…[that LPS'] agents surrogate signed more that 30,000 assignments of mortgage relating to properties in all 50 states and the District of Columbia." *AHMSI v. LPS* ¶ 25.

29. LPS has admitted to AHMSI that certain notarizations in foreclosure documents executed by LPS on behalf of AHMSI "contained a notarization error" and certain foreclosure papers "may have contained errors in their execution." *AHMSI v. LPS* ¶¶ 34-35.

## C.  BACKGROUND ON THE NAMED PLAINTIFFS

30. At all times relevant to this complaint, the Gefferts have lived at the Property.

31.  The servicing rights of the Gefferts' home mortgage loan related to the Property were transferred from Citi Residential Lending, Inc. to AHMSI.  Upon transfer, AHMSI did not accurately and correctly report the status and accounting of the Geffert loan. AHMSI has not accurately and correctly reported the status and accounting of the Gerrert loan. However, AHMSI believed at the time of transfer that the Gefferts were then in default based upon the electronic records it received from its assignor.

32. Not known or apparent to the Gefferts until October 2011, AMHSI had actually filed, through BGW, a bogus Order to Docket in the Circuit Court of Montgomery County, Maryland against them in an attempt to collect a debt related to the Property. There

was no way for the Gefferts to know that the documents were bogus. There was no indication that someone was signing the documents other than the person(s) identified with the signature.

33. Through its authorized attorneys BGW, AHMSI authorized the foreclosure case as a consent decree foreclosure action in furtherance of its efforts to collect a debt against from the Gefferts in the Circuit Court of Montgomery, Maryland on January 4, 2010 (Case No. 325019-V)("First Order to Docket Action").  A consent decree foreclosure under the Maryland Rules permits a bona fide secured party to commence a foreclosure action without having to proceed through a longer judicial process. Essentially, the state court entrusts to certain Members of the Bar acting as officers of the Court and substitute trustees for secured parties, the responsibility to comply with certain mandatory prerequisites on behalf of the Court—thereby assuming substantial responsibilities from the state court clerks and judges. In this case, BGW did not act within that scope of authority granted by the state courts for several reasons including AHMSI's business relationship with BGW through LPS as described in the above paragraphs.

34. As part of the Order to Docket papers filed with the Court in the First Order to Docket Action authorized by AHMSI against the Gefferts, the Affidavit of Deed of Trust Debt, Certification of Deed of Appointment of Substitute Trustee, and Affidavit of Non-Military Service in the Order to Docket were purportedly signed with the name "Jacob Geesing" (as an authorized agent of AHMSI) but in fact were not signed by him.  This belief is based on signature purporting to be Jacob Geesing's actual signature related to publically filed documents related to a Maryland property located

at 6400 East Halbert Road, Bethesda, Maryland.  This belief is also based upon the "Corrective Affidavits" signed by Jacob Geesing in the Class member foreclosure actions filed by BGW on behalf of AHMSI as well as his admissions that he did not sign many papers that were filed as if he had signed the documents.

35. Included among the bogus Order to Docket filed by AHMSI's representatives against the Gefferts were also an Affidavit of Deed of Trust Debt and Affidavit of Non-Military Service in the Order to Docket were allegedly notarized by Rodnita Moulton ("Moulton").

36. On or about August 5, 2010, the Maryland Office of the Secretary of State decommissioned Moulton's notary commission because it was disclosed that she had participated in the false notarizations at BGW on behalf of the consumer debt collection practices on behalf of AHMSI in the First Order to Docket Action.

37. On or about October 22, 2010, Geesing filed a Substitute Trustees' Verified Response in Opposition to Defendants' Emergency Request for Consideration of Defendants' Renewal of Verified Motion to Dismiss Plaintiffs' Foreclosure Action or Alternatively for a Stay Pending Further Proceedings Under New Rule 14-207.1 in an unrelated case involving AHMSI, i.e. *Geesing v. Willson* (Circuit Court for Howard County, Case No. 13-C-10-082594).

38. Neither Geesing's signature on the deed of trust related to his own home nor the signature on the Substitute Trustees' Verified Response in Opposition to Defendants' Emergency Request for Consideration of Defendants' Renewal of Verified Motion to Dismiss Plaintiffs' Foreclosure Action or Alternatively for a Stay Pending Further Proceedings Under New Rule 14-207.1 match the signature on the Order to Docket

and other papers in the First Order to Docket Action filed against the Gefferts and the Property.

39. Upon information and belief, the Geffert Order to Docket in the First Order to Docket Action is bogus because someone other than Geesing signed for him swearing the truth of certain facts and Moulton fraudulently notarized that Geesing "personally appeared" before her and signed the Affidavit of Deed of Trust Debt and Certification Regarding Debt Instrument in the First Order to Docket Action. This belief is based upon published reports concerning attorney robo-signing practices in Maryland including those admitted to by BGW to numerous state courts.

40. Until the Gefferts retained counsel in October 2011, they had no idea that AHMSI's authorized attorneys BGW had used unfair, bogus, and deceptive signing practices to improperly obtain the jurisdiction of the state court in an effort to collect a consumer debt from the Gefferts.

41. Until the Gefferts retained counsel in October 2011, they had no idea that LPS had utilized unfair, bogus, and deceptive signing practices to improperly obtain assignments of the Gefferts loan for AHMSI which was the basis for commencing and maintaining the First Order to Docket Action as alleged and admitted to in the *AHMSI v. LPS* action.

42. The Gefferts have been damaged by AHMSI's and LPS' direct and indirect actions, including those by their authorized and affiliated substitute trustees and attorneys BGW, described herein through: (i) the improper commencement and prosecution of the First Order to Docket Action against them that has damaged their credit by the public filing of a bogus action in the state court which cannot be expunged; (ii) cost

14

them fees and costs to their mortgage account charged by AHMSI to which the

services provided and charged to their account were not bona fide or otherwise legal;

and (iii) emotional damages due to stress, anxiety, fear, and other physical

manifestations.

### FACTS COMMON TO THE CLASS

43.  The class claims asserted herein are brought by the Gefferts on behalf of themselves

and a Class of all Maryland residents who were (i) an owner-occupant of residential

property in the State of Maryland; (ii) subject to a foreclosure action docketed by

Howard Bierman, Jacob Geesing, or Carrie Ward on behalf of AHMSI based upon an

assignment prepared by LPS; and (iii) during the foreclosure proceeding, Howard

Bierman, Carrie Ward, or Jacob Geesing supported the foreclosure action through the

filing of one or more bogus documents.  This shall be referred to as the "Class".

44. Named Plaintiffs sue on their own behalf and on behalf of the people who comprise

the Class under FED. RULE CIV. PROC. 23.

45. Named Plaintiffs do not know the exact size or identities of the proposed Class.

However, the size and identify of the Class can easily be identified from the records

of the Defendants and their attorneys BGW as well as public records available in state

courts.

46. Upon information and belief the Class encompasses more than 50 individuals based

upon public records filed in the circuit courts of the State of Maryland and reported

by AHMSI and BGW to the Office of the Commissioner of Financial Regulation.

47. All members of the Class have been subject to and affected by the same conduct. The

claims are based on the same actions.  There are questions of law and fact that are

common to the Class, and predominate over any questions affecting only individual members of the Class.  These questions include, but are not limited to the following:

a.      whether AHMSI's foreclosure actions through improper papers and affidavits by its authorized substitute trustees/attorneys, BGW, and LPS have any legal effect;

b.      whether Defendants' conduct through its authorized substitute trustees/attorneys, BGW, amounts to "unclean hands";

c.      whether Defendants' conduct violates the Maryland Consumer Protection Act ("MCPA"), MD CODE ANN., COM. LAW, § 13-101, *ET SEQ.*;

d.      whether Defendants' conduct violates the MARYLAND CONSUMER DEBT COLLECTION ACT ("MDCDCA"), MD CODE ANN., COM. LAW, § 14-201, *ET SEQ.;*

e.      whether Defendants' conduct violates the MARYLAND MORTGAGE FRAUD PREVENTION ACT ("MMFPA"), MD CODE ANN., REAL PROP., § 7-401, *ET SEQ.;*

f.      whether the Defendants should be enjoined from continuing to pursue foreclosure actions, directly or indirectly, in Maryland based upon bogus affidavits and papers;

g.      whether the Defendants should be ordered to refund to Class all legal fees and expenses assessed as part of the bogus foreclosure action against them by AHMSI and its authorized agents and affiliates;

h.      the attorney fees, litigation costs, and court costs allowed and claimed in this civil action;

> i.      whether AHMSI's actions through its agents and attorneys BGW and LPS were authorized by Maryland Courts;
>
> j.      the declaratory relief sought in this civil action; and
>
> k.      the injunctive relief sought in this civil action.

48.  The claims of the Named Plaintiffs are typical of the claims of the class and do not conflict with the interests of any other members of the class in that both the Named Plaintiffs and the other members of the class were subject to the same conduct.

49. The Gefferts' claims are typical of the claims of members of the Class.

50. The Named Plaintiffs are similarly situated with and have suffered similar damages as the other members of the Class as described in ¶¶ 3-4, 22, 31-32, and 42-43.

51. The Named Plaintiffs will fairly and adequately represent the interests of the Class. They are committed to the vigorous prosecution of the class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions related to Maryland's foreclosure laws and procedures.

52. A class action is superior to other methods for the fast and efficient adjudication of this controversy.  A class action regarding the issues in this case does not create any problems of manageability.

53. This putative class action meets all of the requirements of FED. RULE CIV. PROC. 23.

54. The Defendants have acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

55. It would not be economically feasible for each of the individual Class members to

maintain similar claims since many of them have already suffered financial setbacks.

56. The damages of each individual Class member can be calculated using the same common formulas and are similar in nature as those as the Gefferts identified in ¶¶ 3-4, 22, 31-32, and 42-43.

57. Failure to join the claims of each individual claimant into class claims would lead to duplicate claims/litigation involving the same issues and facts, excessive costs and fees, burdens and potentially inconsistent outcomes.

58. The common issues set forth above predominate and asserting the claims on a class basis is superior to the alternative.

59. AHMSI is presumed to know of all BGW's activities on its behalf in the state foreclosure actions against the Named Plaintiffs and Class Members even if it never reviewed what BGW did on its behalf.  *Putnam v. Day*, 89 U.S. 60, 22 L. Ed. 764 (1874); *Salisbury Beauty Sch. v. State Bd. of Cosmetologists*, 268 Md. 32, 300 A.2d 367 (1973); *Bob Holding Corp. v. Normal Realty Corp.*, 223 Md. 260, 266, 164 A.2d 457, 460 (1960).

60. Further, based upon the admissions of AHMSI on its website, it's knowledge of BGW's and LPS' activities on its behalf also arises from its quarterly review concerning the performance of BGW and LPS on at least a quarterly basis as well as regular communications between AHMSI and its attorneys including BGW.

61. Finally, AHMSI's knowledge of BGW's activities on its behalf is also known to it through the compensation structure it provided to BGW to perform the services necessary to complete a foreclosure action in the State of Maryland throughout the last three years.  Those necessary and required services have increased dramatically

yet AHMSI has not substantially increased its fees payable to BGW given the increased amount of work necessary to properly conduct foreclosures. This disparity has resulted in BGW practices on behalf of AHMSI that are subject to this lawsuit.

62. If the Court determines that the Named Plaintiffs' Class claims for damages cannot be maintained on a class-wide basis, the Gefferts request the Court in the alternative to certify this action with respect to particular issues identified in ¶ 47 above. *See* FED. RULE CIV. PROC. 23(c)(4).

63. There was no reasonable possibility that any of the parties affected by these actions could have known of the defects in the affidavits, papers, deeds, and other documents which claimed to have been executed by the Defendants. Maryland courts and the clerks of the courts had not discovered the fraudulent nature of thousands of these documents despite daily review of such documents. The Plaintiffs only became aware of the nature of the documents in October 2011.

64. The Plaintiffs had no reason to suspect the true illegal nature of the illegal, unfair, deceptive and unconscionable debt collection practices of the Defendant alleged herein because the state courts and judicial officers and thousands of other Maryland consumers could never have considered that have predicted the scale of the bogus practices involved in this action. This conclusion is based in part on the statement of the Rules Committee of the Maryland Judiciary to the Maryland Court of Appeals that the acts alleged herein "constitutes an assault on the integrity of the judicial process."

65. This case is one of those rare instances where circumstances external to the conduct of the Named Plaintiffs and the Class members warrant a finding that it would be

19

unconscionable to enforce the various federal and state limitations periods against the Named Plaintiffs and Class members since such an act would create a gross injustice of allowing the Defendant to wrongfully and unjustly enriched to the detriment of the Plaintiffs and Class members in a total sum of hundreds of thousands of dollars.   Of course, each of these dol lars was passed on to the victims as the costs of the improper foreclosures.

### COUNT ONE – VIOLATION OF MARYLAND'S CONSUMER PROTECTION ACT, MD. CODE ANN. COM. LAW § 13-101 *et. seq.*

### (INDIVIDUAL AND CLASS CLAIMS)

66.  The mortgage loan servicing, transactions and foreclosure practices as set forth herein of the Defendant against the Named Plaintiffs and Class members are governed by the Consumer Protection Act, MD. CODE ANN. COM. LAW § 13-101 *et. seq.*

67. Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts.  The prosecution of a foreclosure action involves the collection of debts.

68. The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

69. By engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the

failure to do so deceived or tended to deceive, the Defendant has committed unlawful or deceptive trade practices in violation of the Maryland Consumer Protection Act. Sec. 13-301(1) and (3) and Sec. 13-303(4) ("MCPA").

70. The Defendant's conduct, as set forth above, had the capacity, tendency or effect of deceiving the Gefferts and other Class members, who in fact were deceived or misled, causing injury and loss through:

   a.  the unfair or deceptive prosecution, based upon bogus papers and affidavits, of a foreclosure action by Defendant through its authorized substitute trustees/attorneys BGW and LPS; and

   b.  the Defendant's payment structure and relationship with BGW as described above "infected" and "exasperated" the use of bogus papers and foreclosure practices of BGW since unless BGW met AHMSI's goals, it could not receive future work and the only way to perform the services necessary for AHMSI as a for profit business, which is how BGW is organized, was to use non-attorney signers for Bierman, Geesing, and/or Ward.  *Hoffman v. Stamper*, 385 Md. 1, 32, 867 A.2d 276, 294 (2005).

71. The Named Palintiffs and Class have been damaged as described herein.

72.  In addition to its direct liability pursuant to this claim, AHMSI is alternatively responsible as BGW's and LPS' principal in the foreclosure actions brought on its behalf.  Under Maryland law, however, "'[a] principal is *prima facie* liable for the acts of his agent done in the general course of business authorized by him.' *Carroll,* 3 A. at 29." *Winemiller v. Worldwide Asset Purchasing, LLC*, 1:09-CV-02487, 2011 WL 1465571, *3 (D. Md. Apr. 15, 2011).

WHEREFORE, the Gefferts request the following on their behalf and on behalf of Class:

A.  They and the class be awarded as part of this claim a sum of no less than $5,000,000 which represents their compensatory damages as a result of the Defendant's, direct and indirect, unfair or deceptive practices, said sum may be amended;

B.  The Court certify the Class and appoint the Plaintiffs as class representatives and their counsel as Class Counsel;

C.  They be awarded their reasonable attorney's fees and costs; and

D.  That their claim should include such other and further relief as the Court deems just and proper.

## COUNT TWO: VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT, MD. ANN. CODE, COMM. LAW ART. § 14-202

### (INDIVIDUAL AND CLASS CLAIMS)

73.  The Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 72 of this Complaint with the same effect as if herein fully set forth.

74.  By authorizing the filing debt collection foreclosure proceedings and/or conducting foreclosure actions based upon bogus or insufficient papers and affidavits through its authorized substitute trustees/attorneys BGW and LPS, the Defendant has asserted a claim with knowledge that the right does not exist in violation of Md. Ann. Code, Comm. Law Art. § 14-202 (8).

75.  The requisite knowledge that is required by AHMSI for its liability under the is detailed above; alternatively AHMSI is responsible as BGW's and LPS' principal in

the foreclosure actions brought on its behalf.  Under Maryland law, however, "'[a] principal is *prima facie* liable for the acts of his agent done in the general course of business authorized by him.' *Carroll,* 3 A. at 29." *Winemiller v. Worldwide Asset Purchasing*, LLC, 1:09-CV-02487, 2011 WL 1465571, *3 (D. Md. Apr. 15, 2011).

76. The Gefferts and Class seek a remedy under the Maryland Consumer Debt Collection Act ("MCDCA") for damages, attorneys' fees, and any other relief available against the Defendant.

77. The Named Plaintiffs and Class have been damaged as described herein.

   WHEREFORE, the Gefferts request the following on their behalf and on behalf of the class:

   A.  They and the class be awarded as part of this claim a sum of no less than $5,000,000 which represents their compensatory damages as a result of the Defendant's unfair or deceptive practices, said sum may be amended;

   B.  The Court certify the Class and appoint the Named Plaintiffs as class representatives and their counsel as Class Counsel;

   C.  They be awarded their reasonable attorney's fees and costs;

   D.  That their claim should include such other and further relief as the Court deems just and proper.

## COUNT THREE:  MARYLAND MORTGAGE FRAUD PROTECTION ACT, MD. ANN. CODE, REAL PROP. § 7-401 MD. REAL PROP., *et seq.*

### (INDIVIDUAL AND CLASS CLAIMS)

78. The Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 77 of this Complaint with the same effect as if herein fully set forth.

23

79. The Maryland Mortgage Fraud Protection Act, Md. Ann. Code, Real Prop. § 7-401 MD. REAL PROP., *et seq.* ("MMFPA") governs the relationship between the Defendant and the Named Plaintiffs and Class members with transactions that accrued since April 4, 2008.

80. MD ANN. CODE., REAL PROP. § 7-401 (c) provides: "Homeowner" means a record owner of residential real property. The Plaintiffs and Class Members are record owners of the residential properties in question and therefore are Homeowners.

81. MD ANN. CODE., REAL PROP. § 7-401 (e) provides "Mortgage lending process…includes [t]he…servicing…of a mortgage loan."

82. MD ANN. CODE., FINANCIAL INSTITUTIONS CODE. § 11-501 (k)(1) provides: "Mortgage loan" means any loan or other extension of credit that is: (i) Secured, in whole or in part, by any interest in residential real property in Maryland; and (ii) If for personal, household or family purposes, in any amount."

83. The MMFPA works to protect the interests of all parties to mortgage issues in Maryland from misstatements, misrepresentations and omissions; in this instance the MMFPA works to protect borrowers like the Gefferts from mortgage companies like the Defendant and ensure a level, fair playing field between all borrowers and professionals.

84. The Plaintiffs and members of Class were or are homeowners in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the servicing of their residential mortgage loans as it relates to the foreclosure action which is an attempt to collect a certain sum on the mortgage transaction.

85. MD ANN. CODE., REAL PROP. § 7-401 (d) provides:

"Mortgage fraud" means any action by a person made with the intent to defraud that involves:

1. Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;

2. Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

3. Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;

4. Conspiring to violate any provisions of item of (1), (2) or (3) of this section…

86. The Defendant has committed Mortgage Fraud by:

a. Knowingly making, as described herein, deliberate misstatements, misrepresentations and omissions during the mortgage lending process, including the state court foreclosure actions it has commenced and carried out, with the intent that the misstatements, misrepresentations and omission be relied on by the Plaintiff and Class Members (and the general public and state courts);

b. Knowingly using or facilitating, as described herein, the use of any deliberate misstatements, misrepresentations, and omissions during the mortgage lending process, including the state court foreclosure actions it has commenced and carried out, with the intent that the misstatements, misrepresentations, and omissions be relied on by the Plaintiff and Class Members.

87. The requisite knowledge that is required by AHMSI for its liability under this claim is

detailed above; alternatively AHMSI is responsible as BGW's and LPS' principal in the foreclosure actions brought on its behalf.  Under Maryland law, however, "'[a] principal is *prima facie* liable for the acts of his agent done in the general course of business authorized by him.' *Carroll,* 3 A. at 29." *Winemiller v. Worldwide Asset Purchasing, LLC*, 1:09-CV-02487, 2011 WL 1465571, *3 (D. Md. Apr. 15, 2011).

88. Plaintiff and the Class Members have been damaged by the Defendant's deliberate misstatements, misrepresentations, and omissions during the mortgage lending process as stated herein. As a result Plaintiff and Class Members have been damaged by AHMSI's commencement of foreclosure actions against them by providing the Plaintiff and Class Members with a condition precedent before the commencement of that lawsuit—i.e. a valid affidavit or declaration.

89. MD ANN. CODE., REAL PROP. CODE. § 7-401 (g) provides:

> Pattern of mortgage fraud means two or more incidents of mortgage fraud that:
>
> - Involve two or more residential real properties; and
> - Have similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics.

90. Upon information and belief the Defendant has engaged in a Pattern of Mortgage Fraud by committing similar acts against two or more Maryland residential properties with similar intents, results and methods of commission as that which was committed by AHMSI against the Plaintiff and Class  Members as described herein.   This belief is also based upon the review of public records in the state courts of an identical

nature of acts alleged herein.

91. The Named Plaintiffs and Class have been damaged as described herein.

92. In addition to its direct liability pursuant to this claim, AHMSI is alternatively responsible as BGW's and LPS' principal in the foreclosure actions brought on its behalf.  Under Maryland law, however, "'[a] principal is *prima facie* liable for the acts of his agent done in the general course of business authorized by him.' *Carroll,* 3 A. at 29." *Winemiller v. Worldwide Asset Purchasing, LLC*, 1:09-CV-02487, 2011 WL 1465571, *3 (D. Md. Apr. 15, 2011).

> WHEREFORE, the Gefferts request the following on their behalf and the Class:

> A.  They and the class be awarded as part of their claims the sum of no less than $5,000,000 which represents  their compensatory damages as a result of the Defendant's illegal practices and misrepresentations;

> B.  The Court certify the Class and appoint the Plaintiffs as class representatives and their counsel as Class Counsel;

> C.  They be awarded willful and knowing damages up to three times the total compensatory damages awarded.;

> D.   They be awarded as part of the claim their reasonable attorney's fees and costs; and

> E.  That their claim should include such other and further relief as the Court deems just and proper.

## COUNT FOUR: DECLARATORY AND INJUNCTIVE RELIEF

## (INDIVIDUAL AND CLASS CLAIMS)

93.  The Plaintiffs adopt by reference the allegations contained in paragraphs 1 through

92 of this Complaint with the same effect as if herein fully set forth.

94. Plaintiffs seek a declaration of their rights, as well as the rights of the Class, with respect to the state court foreclosure actions the Defendant has commenced based upon bogus or insufficient papers and affidavits through its authorized substitute trustees/attorneys BGW and LPS.

95. An actual controversy exists as to whether Defendant's foreclosure efforts violate the MCPA, MCDCA, MMFPC, and common law of Maryland.

96. Declaratory relief is appropriate pursuant to Rule 23, MD ANN. CODE., CTS. & JUD. PROC., § 3-403, and 28 U.S.C. § 2201.

97. Declaratory relief is also appropriate pursuant to Rule 23(c)(4) since Plaintiffs seek to maintain this claim on behalf of the Class for the purpose of determining and answering the issue of whether AHMSI has complied with Md. Code Regs. 09.03.06.20 in regards to its foreclosure practices through BGW and LPS.

98. Plaintiffs are entitled to an injunction since the actions of AHMSI are improper and illegal.

99. The public interest is served by enjoining the Defendant from continuing to violate the Maryland procedures, regulations, and laws.

100. The public interest will be further served by mandating that Defendant is responsible for the fast-track, illegal foreclosure practices of Defendant's authorized substitute trustees/attorneys based upon bogus or insufficient papers and affidavits.

101. The foreclosures relate to the homes of the Plaintiffs and other Class members and will cause irreparable harm if the Defendant is not enjoined.

102. The burden imposed on the Defendant by requiring it to comply with Maryland

foreclosure laws and related regulations concerning the servicing of mortgage loans is substantially outweighed by the harm suffered by Plaintiffs and Class members by allowing the Defendant to wrongfully foreclose and ignore Md. Code Regs. 09.03.06.20.

WHEREFORE, the Gefferts request the following on their behalf and also on behalf of members of Class:

A.  Certify this case as a class action pursuant to Rule 23, with the Named Plaintiffs as class representatives and their attorneys acting as counsel on behalf of the Class described herein;

B.  Order appropriate injunctive relief to rectify past violations of law and to prevent further violations of law, including a temporary restraining order, preliminary and permanent injunction on any foreclosure actions currently pending or to be instituted against the Plaintiffs or any members of the classes; and

C.  Order other appropriate declaratory relief.

Respectfully Submitted,

/s/ Scott C. Borison
Scott C. Borison, Esq. (Bar No. 22576)
borison@legglaw.com

/s/ Phillip R. Robinson
Phillip R. Robinson, Esq., Of Counsel
(Bar No. 93431)
probinson@legglaw.com

/s/ Janet Legg
Janet Legg, Esq. (Bar No. 15552)
legg@legglaw.com
Legg Law Firm, LLC.
5500 Buckeystown Pike
Frederick, Maryland 21703
(301) 620-1016
Fax: (301) 620-1018